## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 26 2019, 8:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jessica L. Hoover
Law Office of Jessica L. Hoover, LLC
Remington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Termination of the Parent-Child Relationship of A.M. (Minor Child) and B.S. (Mother) | February 26, 2019 |
| B.S. (Mother), | Court of Appeals Case No. 18A-JT-1877 |
| *Appellant-Respondent,* | Appeal from the Jasper Circuit Court |
| v. | The Honorable John D. Potter, Judge |
| Indiana Department of Child Services, | Trial Court Cause No. 37C01-1805-JT-103 |
| *Appellee-Petitioner* | |

**Vaidik, Chief Judge.**

# Case Summary

[1] B.S. ("Mother") appeals the termination of her parental rights to her daughter, A.M. ("Child"). We affirm.

# Facts and Procedural History

[2] Mother and F.M. ("Father") are the biological parents of Child, born in May 2010, and I.M. ("Sibling"), born in December 2016.[1] Father's parental rights were also terminated; however, Father does not participate in this appeal, and we therefore limit our narrative to the facts relevant to Mother. The facts that follow are taken primarily from the trial court's findings of fact, none of which Mother challenges on appeal.[2]

[3] In August 2017, the Indiana Department of Child Services (DCS) received a report that Mother was homeless, Child had not been enrolled in school, and Mother did not have proper food for nine-month-old Sibling. Just over a week later, DCS received a second report alleging that Mother physically abused Child, slept excessively, suffered from depression, left Child unattended, and left Child in the care of her mother ("Grandmother"). Grandmother used drugs

---

[1] The trial court terminated Mother's parental rights to Sibling in a separate order. Although the facts and procedural history of Sibling's case are identical to Child's, Mother appealed the termination of her parental rights to Sibling in a separate appeal, which this Court recently affirmed. *See In re I.M.*, Case No. 18A-JT-1878 (Ind. Ct. App. Feb. 20, 2019). We therefore limit our narrative to the facts relevant to Child.

[2] Because Mother does not challenge the trial court's findings of fact, we accept them as true. *See Maldem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992).

and neglected Child when she was in her care. On September 6, Mother tested positive for tetrahydrocannabinol (THC), the active ingredient in marijuana. DCS opened an informal adjustment with Mother on September 21, and Mother agreed to complete services to "alleviate the reasons for [DCS] involvement." Tr. p. 45.

[4] Just over two weeks later, Mother was arrested after a traffic stop where she was found in possession of drug paraphernalia. While in custody, Mother told DCS that Sibling was with Father, but later DCS found Sibling with Mother's aunt. The day after Mother's arrest, Child was removed and DCS filed a petition alleging that Child was a child in need of services (CHINS). The CHINS petition alleged, in part:

> a. That the family entered into an Informal Adjustment with the DCS on or about September 21, 2017, and since that date [M]other tested positive for marijuana.
>
> b. That on or about October 10, 2017, Family Case Manager Holly Ammann ("FCM Ammann") learned that [M]other was incarcerated at the Newton County Jail. FCM Ammann went and spoke with [M]other at the Newton County Jail and [M]other informed her that she was pulled over for speeding and that she was arrested for possession of paraphernalia along with her mother and uncle.
>
> c. That when FCM Ammann asked [M]other where [Sibling] was [M]other was dishonest stating [Sibling] was being watched by [Father], DCS was eventually able to locate [Sibling] with [M]other's aunt.

d.  That [Child] has had five unexcused absences from school along with her being tardy eight times since school started on August 28, 2017.

Appellant's App. Vol. II p. 8.  On October 11, the trial court held an initial detention hearing.  Mother admitted the allegations in the CHINS petition, and the trial court determined that Child was a CHINS.  *See id*. at 11.  The trial court found that the removal of Child was authorized and necessary to protect Child.  Following a dispositional hearing in November, the trial court ordered Mother to participate in numerous services with the goal of reunification with Child.  *See id*. at 14-19.

[5]  In April 2018, the trial court held a review hearing.  Following the hearing, the trial court found, in relevant part:

[Mother] ha[s] not complied with [C]hild's case plan.  [Mother] has been non-compliant with service providers and does not maintain contact with DCS.

[Mother] ha[s] not enhanced [her] ability to fulfill [her] parental obligations.  [Mother] has been non-compliant with services.

[Mother] ha[s] not visited [Child].  [Mother] has only participated in 9.25 hours of the offered 55 hours of visitation with [Child].

[Mother] ha[s] not cooperated with DCS.

*Id*. at 20.  The trial court conducted a permanency hearing in May and found that Mother had not complied with Child's case plan, failed to submit to regular

random drug screens or participate in ordered services, and remained unemployed without housing for Child. *See id*. at 22. The trial court approved DCS's request to change Child's permanency plan "from reunification to adoption." *Id*. at 23. Thereafter, DCS filed a petition to terminate Mother's parental rights to Child.

[6] In July, the trial court held a fact-finding hearing on the termination petition. After the hearing, the trial court issued an order on July 13 terminating Mother's parental rights to Child. The order provides, in relevant part:

> **There is a reasonable probability that the conditions that resulted in [Child's] removal or the reasons for the placement outside the parent's home will not be remedied in that:**
>
> a. Mother continued to test positive for illegal drugs throughout the CHINS case including THC and cocaine. Mother also tested positive for THC while currently pregnant.
>
> *****
>
> c. Mother only met with her homemaker services worker once and had several no-call, no-shows to appointments. Mother still does not have appropriate housing and is still not employed.
>
> d. Mother's first therapist was never able to start individual therapy over a two month period due to difficulty contacting [M]other despite calling, texting, and making visits to the home.
>
> *****

g. Mother was inconsistent with visitation, [M]other only attended five out of thirty-nine visitations, the last being in January of 2018.

h. Mother did not attend any counseling sessions after her initial intake and she failed to attend any intensive outpatient treatment sessions.

\*\*\*\*\*

m. Mother did not contact DCS from December 21, 2017, until March 18, 2018, except for at court appearances.

n. In March 2018, [M]other informed DCS by text that she was homeless and paperwork could be sent to an address in East Chicago.

o. Mother admitted she continued to use drugs because [Children] were taken away and it was hard.

p. Mother never asked DCS to move services closer to her when she lived in East Chicago.

q. Mother['s] relationship with the man she was living with after removal involved daily fighting where [M]other would leave and then return.

**There is a reasonable probability that continuation of the parent-child relationship poses a threat to the well-being of [Child] in that:**

a. Mother only met with her homemaker service provider to find housing and employment once and then no-called or no-showed the remainder of the appointments.

b. Mother's first therapist had great difficulty contacting [M]other despite numerous calls, texts, and visits to the home over a two month period and [M]other never began individual therapy.

\*\*\*\*\*

e. [Mother] was inconsistent with visitation and only attended five out of thirty-nine visitations, the last of which was in January of 2018.

f. Mother never attended individual therapy or intensive outpatient drug treatment after the initial intake appointment.

\*\*\*\*\*

h. Mother admitted she continued to use drugs because [Child and Sibling] were taken away and it was hard.

\*\*\*\*\*

**Termination is in the . . . best interests of [Child] in that:**

\*\*\*\*\*

d. Mother continues to maintain a lifestyle that necessitated the informal adjustment and then removal in 2017.

e. Mother who is currently pregnant, still continues to use illegal drugs.

f. Mother did not participate in any of the mental health services that were provided.

g. Mother does not have a stable residence and has lived with various people with no home of her own.

h. Mother's rate of attendance . . . as to visits is less than twenty percent.

i. Mother is not ready to address her problems as she testified it was all the other people around her in her life causing the problems.

*Id.* at 29-31 (emphases added).

[7]     Mother now appeals.

# Discussion and Decision

[8]     When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re K.T.K.*, 989 N.E.2d 1225, 1229 (Ind. 2013). Rather, we consider only the evidence and reasonable inferences that are most favorable to the judgment of the trial court. *Id.* When a trial court has entered findings of fact and conclusions, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* To determine whether a judgment terminating parental rights is clearly erroneous, we review whether

the evidence supports the trial court's findings and whether the findings support the judgment. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016).

[9]     A petition to terminate parental rights must allege, among other things:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *In re K.T.K.*, 989 N.E.2d at 1231. If the court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[10]     First, Mother argues there is insufficient evidence to support the trial court's conclusion that the conditions resulting in Child's removal will not be

remedied. In determining whether the conditions that resulted in a child's removal will not be remedied, the trial court engages in a two-step analysis. "The court first identifies the conditions that led to removal and then determines whether there is a reasonable probability that those conditions will not be remedied." *In re A.W.*, 62 N.E.3d 1267, 1273 (Ind. Ct. App. 2016) (citing *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014)). A parent's fitness is measured at the time of the termination hearing, and changed circumstances are balanced against habitual patterns of conduct to see if there is a "substantial probability of future neglect or deprivation." *Id*. Trial courts have discretion to weigh a parent's history more heavily than efforts made shortly before termination, and the court may find that a parent's past behavior is the best predictor of future behavior. *Id*.

[11] Here, Mother failed to demonstrate that she was any closer to providing Child a safe, stable home than she was at the beginning of the CHINS case. The evidence shows that Mother failed to engage with DCS, refused to participate in services, and was unable to combat her substance-abuse issues. *See* Tr. p. 47. The trial court's unchallenged findings on this issue support its conclusion that the conditions resulting in Child's removal will not be remedied. *See, e.g.*, *In re E.M.*, 4 N.E.3d at 644 (findings regarding father's continued non-compliance with services support trial court's conclusion that conditions resulting in children's removal from father's care would not be remedied). To the extent that Mother argues that she recently attempted to engage in services, the trial court was well within its discretion to disregard the efforts Mother made only

shortly before termination and to weigh more heavily Mother's history of conduct before those efforts. *See In re K.T.K.*, 989 N.E.2d at 1234. Accordingly, the trial court did not err when it concluded that there is a reasonable probability that the conditions resulting in removal will not be remedied.[3]

[12] Next, Mother argues that the trial court erred in concluding that termination is in Child's best interests. To determine what is in the child's best interests, the trial court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. In doing so, the trial court must subordinate the interests of the parent to those of the child. *Id*. The trial court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *In re Z.B.*, 108 N.E.3d 895, 903 (Ind. Ct. App. 2018), *trans. denied*. "Moreover, the testimony of service providers may support a finding that termination is in the child's best interests." *Id*. (citing *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003)).

[13] Here, in addition to Mother's substance-abuse issues that necessitated DCS involvement and her complete lack of progress since then, FCM Ammann testified that terminating Mother's parental rights would serve the best interests

---

[3] Because we affirm the trial court's conclusion that there is a reasonable probability that the conditions that resulted in Child's removal will not be remedied, we do not address its alternate conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of Child. *See In re A.G.*, 45 N.E.3d 471, 478 (Ind. Ct. App. 2015) (Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and requires the trial court to find only one of the two requirements of subsection (B) has been established by clear and convincing evidence), *trans. denied*.

of Child.  *See* Tr. p. 53.  Furthermore, the trial court found that Mother is not ready to accept responsibility for her problems as Mother testified that "it was all the other people around her in her life causing the problems."  Appellant's App. Vol. II p. 31; *see also In re A.P.*, 981 N.E.2d 75, 82-83 (Ind. Ct. App. 2012).  Accordingly, the trial court did not err when it concluded that termination is in Child's best interests.

Affirmed.

Mathias, J., and Crone, J., concur.